WILLIAM COOPER, APPELLEE, V. MARK M. COAD, APPELLANT.

FILED SEPTEMBER 28, 1912. No. 16,758.

1. Principal and Agent: AGENCY: EVIDENCE. Evidence examined and set out in the opinion, *held* sufficient to establish a general agency on the part of defendant's agent, for the sale of the horses in question, and sufficient to justify plaintiff in dealing with him as such.

2. ————: AUTHORITY OF AGENT. And that the services rendered by plaintiff were reasonably within the scope of the business in which defendant's agent was engaged.

APPEAL from the district court for Dawes county: JAMES J. HARRINGTON, JUDGE. *Affirmed.*

A. W. Crites, W. J. Coad and W. H. Herdman, for appellant.

*Andrew M. Morrissey, Justin E. Porter, Allen G. Fisher* and *William P. Rooney, contra.*

FAWCETT, J.

This action was commenced in justice court in Dawes county, where plaintiff had judgment, and defendant appealed to the district court. Upon trial in that court there was a verdict and judgment for plaintiff, and defendant appeals.

It appears that plaintiff was a liveryman and dealer in horses at Crawford, in Dawes county. Defendant was an importer and dealer in blooded stallions, and was located at Fremont, in Dodge county. In March, 1907, defendant employed one J. H. Hall, who, a number of years prior thereto, had been superintendent of the horse ranch at Fremont, for the purpose of selling six stallions that defendant still had on hand as a remnant of his former stock; he having decided to retire from that business. The arrangement with Hall seems to have been that Hall was to make a trip of investigation along the line of the railroad, for the purpose of finding a location where the prospects seemed good for selling these horses. He stopped at Alliance, but, conditions there not being satisfactory to him, he proceeded to Hemingford, where he again found conditions unsatisfactory. He then proceeded to Crawford, arriving there about the middle of the afternoon. Upon arriving there he called at three livery stables in Crawford, the last one being that of the plaintiff. Plaintiff was not in when he called, and, after talking for a while with one of plaintiff's employees, Hall left, stating that he would call again that evening and "talk horse" with plaintiff. In accordance with this statement he called at plaintiff's livery stable after supper that evening. Plaintiff testifies that at that interview they talked over the situation; that he assured Hall that the horses could be sold there; and that Hall agreed with him that, if he (plaintiff) would assist in selling the

horses, he should receive as compensation for his services
$100 for each horse sold; that they thereupon went to the
telegraph office, where Hall wired for the horses to be
forwarded; that the horses arrived two or three days
thereafter, and that he at once proceeded to do everything
he could to assist in their sale; that with the help and
assistance of plaintiff defendant sold one horse to Sherrill
Brothers and another to Stevenson Brothers. Defendant
in his answer denied the making of the contract by Hall,
and further alleged that, if Hall did make the contract,
his act in doing so was outside of the scope of his powers;
that Hall had been employed by defendant for a stated
compensation as his salesman and agent, with power only
to sell and dispose of said animals and to care for and
keep the same at defendant's expense pending such dis-
posal; that he had no other or different power or author-
ity, and that plaintiff at all of the dates named in the
petition had full notice and knowledge of all of these
facts. Defendant in his brief concedes that, the jury
"having returned a general verdict in favor of Cooper, it
must be conceded for the purposes of these appeals that
Hall did so contract with Cooper." The question for our
consideration, therefore, is whether Hall in making this
contract acted within the scope of his authority as the
agent of defendant. The only assigned errors argued in
defendant's brief are: (1) That the verdict is not sustained
by sufficient evidence; (4) that the verdict is contrary to
the instructions given by the court; and (7) that the
court erred in giving instruction No. 3 given upon its own
motion. We will consider these errors in the order named.

Mr. Hall was introduced as a witness for defendant.
He testified that he was a stranger in Crawford; that he
"didn't know a soul." Plaintiff has lived in Dawes county
for many years. He testified that he knows substantially
every man and every horse in Dawes county. Hall was
a stranger. He was there for the purpose of selling horses
of a kind which are not purchased generally by people
who own horses, but are only purchased by a man here

and there over the country. It is true he told plaintiff that the horses belonged to Coad, but, so far as the evidence shows, nothing else was said by him to indicate or cause plaintiff to suspect that there were any limitations on his authority as Coad's agent. After making the contract he, in plaintiff's presence, wired for the horses. The horses came accompanied by a caretaker. Hall secured quarters for them. He also had with him printed matter for distribution. The horses ranged in price from $500 to $1,500, according to the testimony offered by defendant, and from $500 to $1,250, according to the evidence introduced by plaintiff. Hall was there as defendant's agent to sell horses of this character and value, in a town where "he didn't know a soul," with power to name the price, so far as any purchaser was concerned, regardless of whether any limitation had been placed upon the price by his principal. He had power to sell them for cash or upon one or two years' time, and to pass upon the solvency of the purchaser. There was nothing to lead any one dealing with him to suspect that he did not have full authority to resort to any reasonable means to effect a sale of the horses. We do not think the agreement he made with plaintiff was, considering the character of the horses and the prices fixed upon them, at all unreasonable. Defendant says that in his instructions to Hall he fixed a price at which the horses should be sold; yet we think it will not be claimed that, if Hall had sold one of those horses at a hundred dollars less than the price fixed by defendant, and delivered the horse to the purchaser and collected the agreed price, defendant could have repudiated the sale. If Hall had learned of a prospective purchaser living at some distance from Crawford, there can be no doubt but that he would have had authority to employ the plaintiff or any one else to go out and try to induce such prospective purchaser to come in and examine the horses, and to pay him for his time and trouble, regardless of whether a sale was made or not. If so, he surely had a right to make arrangements with a man who

was thoroughly acquainted with that line of business in that county that, if he would assist in obtaining purchasers and take his chances of getting his pay upon sales actually being made, he should receive a compensation of $100 for each animal sold, and that, in the event of a failure to close a sale, he should receive nothing. Under the evidence before us, we think Hall was the general agent of defendant Coad for the purpose of selling those horses, and that he was clothed with power to bind defendant by any reasonable agreement he might make in respect to the business in hand.

In the light of the above holding, the giving of instruction No. 3, given by the court on its own motion, could not have prejudiced defendant, as it is immaterial that the court submitted the question of the apparent scope of Hall's authority, and did not elsewhere in its instructions define apparent scope of an agent's authority.

We have carefully examined the instructions given by the court and do not think there is any merit in defendant's contention that the verdict is contrary to such instructions.

The case was properly submitted to the jury, upon evidence sufficient to sustain the verdict returned. Two courts have found for plaintiff for the full amount of his claim and there the matter should end.

AFFIRMED.